Battle, J.
 

 Ve have no hesitation in deciding that the demurrer of the defendant James McKesson must be overruled. The pflaintiffs, as the next of ldn of his intestate, have a right to a full account of his administratioii, and there is nothing charged in the bill to which he ought not to be compelled to answer. If he, by collusion with the other defendant, who is his son, permitted him to abstract notes from the papers of his intestate, he ought to be accountable for them, and he is equally liable if he fraudulently permitted his son to recover judgment against him upon feigned debts.
 

 The right of the plaintiffs to discovery and relief against the other defendant, the son, is, both upon principle and authority, equally clear. The demurrer admits the charge of collusion, and that being established, it is manifest that the father cannot be relied on to take the proper steps against his son for holding him to a just responsibility to the estate of his intestate. Besides, the plaintiffs seek to have the judgments obtained by the son against the father enjoined, and for that purpose the son is certainly a necessary party. In
 
 Spack
 
 v. Long, 2 Dev. and Bat. Eq. 60, this Court decided, that though, generally, legatees cannot sue a debtor of the testator, because it is the right and duty of the executor to collect all debts, yet, where the executor was insolvent, and manifestly under the influence of the debtor, who was his brother, and that influence was collusively exercised to the injury of the legatees, they might, in Equity, have an account
 
 *319
 
 against the debtor. It is true that, in that case, the executor was insolvent, but it will appear, from the opinion, that the Court based their decision quite as much upon the improper influence exercised by the debtor brother over the executor, to the prej udice of the legatees.
 

 In the present case, assuming, then, collusion between the father and son, as charged in the bill, to be true, the power of the son over the father, will undoubtedly be used in a manner detrimental to the interest of the next of kin.
 

 The counsel for the defendants have referred us to the case of
 
 Pearse
 
 v. Hewitt, 7 Simons, 471, (10 Eng. Ch. Rep. 152,) as an authority against the right of the plaintiffs to make the defendant "William E. McKesson, a party. That was a case where the devisees and legatees, under a will, filed a bill against the trustees and executors, and also against the mortgagee in possession of a part of the estates, alleging that the trustees and executors, colluding with the mortgagee, refused to make him account for the rents which he had received, or to redeem the mortgage, and prayed for an account of the testator’s assets, and that the mortgage might be redeemed. The mortgagee tiled a demurrer for multifariousness, which was sustained by the Yice Chancellor, Sir LaNoelot Shadwell, upon the following ground : “If he (the mortgagee) is never to be freed from his suit until the accounts of the personal estate have been taken, he will not be placed in the situation in which he ought to be, because he has a right to have the account of his principal and interest taken at once, and a day fixed either for the payment of it or for a foreclosure, and not to await the result of taking the accounts of the personal estate, and other matters in which he is not at all interested.” In the course of his remarks, the Yice Chancellor referred to the case of
 
 Doran
 
 v.
 
 Simpson,
 
 4 Ves. Jr., 651, which had been cited to show that a party interested in the personal estate of the testator, had a right to sue a debtor to the estate, where there was collusion between him and the personal representative. But he remarked, that the right to sue extended only so far as was necessary to obtain payment of the debt
 
 *320
 
 lie also referred to the case of
 
 Burroughs
 
 v. Elton, 11 Ves. Jun’r., 29, decided by Lord EldoN, which he said was much discussed, and decided the same principle. ITo closed his remarks upon those two cases by saying, that the creditor might “ sue to the extent to which it was necessary that he should sue for realising the debt, in order that it might be made available for the payment of what was due to himself and the other creditors of the testator, because the hand which ought to receive the debt would not be stretched out to receive it.” “ Those cases, however, (he adds) differ from the present, for there, the sole object was to recover the debt, but this not only seeks to redeem the mortgaged estate, (to which purpose it ought to have been confined, so far as he was concerned,) but relates to a variety of other matters in which he has no interest, and therefore, the cases cited have no analogy to the present.”
 

 We think the situation of the defendant ¥m. E. McKes-son is very different from that of the mortgagee in the case to which his counsel refers, and is more like that of the debtor mentioned in the cases therein cited. He is charged to be a debtor colluding with the administrator, his own father, not only for the purpose of avoiding the payment of the debts which he justly owes the estate, but actually seeking, by means of such collusion, to recover from the estate, debts alleged to be due him, which, in fact, never existed. If the charge of collusion be true, as admitted by the demurrer, it would be contrary to all human experience to expect that the father “ will stretch out his hand to receive the debt” due from his son, or to prevent the collection of the judgments which the son has obtained against him.
 

 Under the circumstances, it seems to us, that he is a necessary party, and his demurrer must be over-ruled.
 

 The plaintiffs are entitled to a decree, over-ruling both demurrers, with costs, and requiring both defendants to put in answers to the bill.
 

 Per Curiam, Decree accordingly..